*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALEXUS GREIWE,

      Plaintiff-Appellee,

v

GAGE FRANKLIN HAMILTON and MICHAEL
GLENN HAMILTON,

      Defendants,

and

MEEMIC INSURANCE COMPANY,

      Defendant-Appellant.

.

UNPUBLISHED
June 23, 2022

No. 357124
Oakland Circuit Court
LC No. 2019-172099-NI

Before: MARKEY, P.J., and SHAPIRO and PATEL, JJ.

PER CURIAM.

On appeal in this underinsured-benefits case, defendant Meemic Insurance Company challenges the trial court's decision to deny its motion for summary disposition. For the reasons stated in this opinion, we reverse.

## I. BACKGROUND

The facts of this case are undisputed. In the early morning on October 21, 2017, Gage Hamilton was driving a Jeep Wrangler owned by his father, Michael Hamilton. Plaintiff Alexis Greiwe was a passenger in the vehicle, along with three others. When Gage fell asleep, the vehicle veered off the roadway, hit a fire hydrant, and all passengers were thrown from the vehicle and sustained injuries as a result of the crash.

At the time of the accident, Gage was insured under his father's policy with Farm Bureau General Insurance Company of Michigan and the policy included liability coverage with limits of $500,000 per person and $500,000 per occurrence. Plaintiff was insured under her grandparents'

policy with Meemic as a resident relative. The Meemic policy included underinsured motorist (UIM) coverage with liability limits of $500,000 per person, and $500,000 per occurrence.

Plaintiff and two other passengers brought separate tort actions against the Hamiltons. After the three cases were consolidated, Farm Bureau filed a complaint for interpleader because the $500,000 liability limit on the Hamiltons' policy would be insufficient to satisfy the claims of all plaintiffs. Farm Bureau and the four passengers eventually agreed to an apportionment of the $500,000, with plaintiff receiving $280,000.

Concluding that a share of the Farm Bureau liability coverage would be insufficient given the extent of her injuries, plaintiff requested payment of UIM benefits from Meemic. Meemic denied the request and so plaintiff amended her complaint in the action against the Hamiltons to add a claim seeking recovery of those benefits. Meemic moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff was not entitled to UIM benefits because the Hamiltons' vehicle was not an "underinsured motor vehicle" as defined by the Meemic policy. The trial court disagreed with Meemic, denied its summary disposition motion, and determined that Meemic was liable to plaintiff "for the excess over any insurance proceeds recovered from the underlying Farm Bureau policy, in this case–$220,000." Plaintiff moved for entry of judgment, and Meemic opposed the motion, arguing that plaintiff misinterpreted the trial court's order denying summary disposition, and the issue of damages should be submitted for arbitration. The trial court granted plaintiff's motion and entered a judgment in favor of plaintiff for $220,000, determining Meemic waived any right to arbitration because Meemic failed to raise the issue of arbitration earlier in the proceedings. This appeal followed.

II. ANALYSIS

Meemic argues that its policy unambiguously precludes UIM coverage because the Hamiltons' vehicle did not satisfy the policy's definition of underinsured motor vehicle. We conclude that this is the required reading of the contract.[1]

"Because providing UIM coverage is optional and not statutorily mandated under the no-fault act, the policy language alone controls the circumstances entitling a claimant to an award of benefits." *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 367; 817 NW2d 504 (2012). "If an insurance contract sets forth definitions, the policy language must be interpreted according to those definitions." *Century Surety Co v Charron*, 230 Mich App 79, 82; 583 NW2d 486 (1998).

---

[1] We review de novo a trial court's decision on a motion for summary disposition. *Dell v Citizens Ins Co of America*, 312 Mich App 734, 739; 880 NW2d 280 (2015). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "[Q]uestions involving the proper interpretation of a contract or the legal effect of a contractual clause are [also] reviewed de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

The "Insuring Agreement" provision of Meemic's policy provides, in part, the following regarding UIM coverage:

1. Subject to the Definitions, Exclusions, Conditions and Limits of Liability that apply to this Part, we will pay compensatory damages which an Insured person is legally entitled to recover as a proximate cause of the negligence of the owner or operator of an underinsured motor vehicle because of bodily Injury which is:

a. sustained by an Insured person;

b. is caused by accident; and

c. *arises out of the ownership, operation, maintenance or use of an underinsured motor vehicle* . . . . [Bold type omitted; emphasis added.]

Meemic argues that the Hamiltons' vehicle was not an underinsured motor vehicle, which is defined by its policy as follows:

3. An underinsured motor vehicle is:

A. a motor vehicle which has bodily injury liability protection in effect and applicable at the time of the accident in an amount equal to or greater than the amounts specified for bodily injury liability by the financial responsibility laws of Michigan, but less than the limits of liability for Underinsured Motorists Coverage shown on the Declarations page; and

B. in which the limits of liability are less than the amount of damages the insured person is legally entitled to recover for bodily injury. [Bold type omitted.]

Under paragraph 3(A), an underinsured motor vehicle is one that has bodily injury liability limits in an amount equal to or greater than the amount required by Michigan law, but less than the liability limits for UIM coverage under Meemic's policy. Thus, for the Hamiltons' vehicle to be considered an underinsured motor vehicle under Meemic's policy, the Farm Bureau policy liability limits for bodily injury must be less than the Meemic policy's UIM liability limits. However, the policies have identical liability limits of $500,000 per person and $500,000 per occurrence. Accordingly, the Hamiltons' vehicle does not satisfy the Meemic policy's definition of an underinsured motor vehicle, and plaintiff's injuries did not arise out of the "ownership, operation, maintenance or use of an underinsured motor vehicle" as required by section 1 of the "Insuring Agreement." Plaintiff is therefore ineligible for UIM benefits under Meemic's policy.

Plaintiff offers several arguments to support the conclusion that the policy's definition of underinsured motor vehicle is ambiguous. We will review each one, taking into account that a provision is unambiguous if "it is not susceptible to more than one interpretation and does not conflict with any other provision." *Coates v Bastian Bros Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007).

Plaintiff first contends that the policy does not address the situation presented by this case, where there are a number of competing claims that exhaust the underlying policy limits. We agree

with plaintiff that Meemic's policy does not address this scenario. However, this does not create an ambiguity. Instead of defining an underinsured motor vehicle in terms of the insured's recovery under the underlying policy, Meemic's definition turns solely on a comparison between the policies' limits of liability. Accordingly, the amount of recovery is not relevant to whether there is UIM coverage under Meemic's policy. The possibility of a less restrictive definition of underinsured motor vehicle than is actually provided in the policy does not render Meemic's definition ambiguous.

Plaintiff also argues that Meemic's definition of underinsured motor vehicle is ambiguous when read in conjunction with other policy provisions. Plaintiff primarily relies on the "Other Insurance" provision, which states:

> If there is Underinsured Motorist Coverage with us or any other insurer for a loss covered by this Part, then for purposes of this coverage, damages shall be limited to the maximum amount shown on the Declarations Page for any one Insured person and/or for two or more Insured persons. Our share is the proportion that our Limit of Liability bears to the total of all applicable limits. *However, any Insurance we provide with respect to a vehicle the Insured person does not own shall be excess over any other valid or collectible Insurance*. [Bold type omitted; emphasis added.]

Plaintiff argues that the emphasized sentence "carves out an exception" for her because she did not own a vehicle at the time of the collision. Plaintiff misinterprets this provision. Simply put, the "Other Insurance" provision addresses how to calculate the amount to be paid by the UIM coverage, not whether there is coverage. The sentence providing that "[o]ur share is the proportion that our Limit of Liability bears to the total of all applicable limits" means that Meemic will pay a pro rata share of the maximum combined coverage of the applicable policies. See *Horr v Detroit Auto Inter-Ins Exch*, 379 Mich 562, 566-567; 153 NW2d 655 (1967). However, the next sentence clarifies that "any Insurance we provide with respect to a vehicle the Insured person does not own" will be paid only as excess coverage, i.e., after the other applicable policies have been exhausted, and not as a pro rata share. But nothing in this provision changes the fact that the other vehicle is not "underinsured" if its liability limits are not less than Meemic's UIM liability limits.

Plaintiff also argues that there is an ambiguity regarding her entitlement to UIM benefits because she satisfied the condition of coverage set forth in section 2(A) of the "Insuring Agreement" provision, which provides in relevant part:

2. We will pay under this coverage only if:

> A. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgment or settlements[.] [Bold type omitted.]

Section 2(A) places an additional condition on UIM coverage. It does not, as plaintiff suggests, expand the definition of underinsured motor vehicle so as to include the Hamiltons' vehicle.

Finally, plaintiff relies on section 3 of the "Limits of Liability" provision, which provides in part:

> 3. Underinsured Motorists Coverage shall be reduced by the sum of the limits of liability under all bodily injury bonds or policies, other than this policy, applicable at the time of the accident.

Plaintiff argues that the purpose of that provision is to avoid duplicate payments for the same injury, not to bar UIM claims, and that she is not seeking a duplicate payment in this case. Meemic counters that, regardless of this provision's purpose, its language merely requires that the total liability limits available to the insured be subtracted from Meemic's liability limits. We agree; this provision does not create UIM coverage under the policy when it does not otherwise exist.

In sum, because the Meemic policy and the Farm Bureau policy both had liability limits of $500,000 per person and $500,000 per occurrence, the Hamiltons' vehicle did not meet the policy definition of "uninsured motor vehicle" and plaintiff cannot recover UIM benefits from Meemic. The trial court erred by denying Meemic's summary disposition motion and entering a judgment in favor of plaintiff for $220,000. Because we conclude that plaintiff is not entitled to receive UIM benefits from Meemic, we need not address Meemic's alternative argument that the amount of plaintiff's damages should be submitted to arbitration.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ /Sima G. Patel